JAMES KEITH SMITH v. FIBER CONTROLS CORPORATION

No. 108

(Filed 15 July 1980)

1. Sales § 22— product liability—action barred by contributory negligence

     Plaintiff's contributory negligence will bar his recovery in a product liability action founded on negligence to the same extent as in any other negligence case.

2. Negligence § 13— contributory negligence—when applicable

     In order for contributory negligence to apply, it is not necessary that plaintiff be actually aware of the unreasonable danger of injury to which his conduct exposes him; rather, plaintiff may be contributorily negligent if his

conduct ignores unreasonable risks or dangers which would have been apparent to a prudent person exercising ordinary care for his own safety.

**3. Sales § 22; Negligence § 34.1— negligent design and manufacture of machine—contributory negligence of person unclogging machine**

In an action to recover for injuries to plaintiff's left hand allegedly caused by defendant's negligence in the design and manufacture of a "fine opener" machine, there was sufficient evidence to carry the case to the jury on the issue of plaintiff's contributory negligence in placing his hand inside the fine opener soon after the power to it had been cut without first determining that no parts were moving inside it where it tended to show that plaintiff was employed as a picker tender; plaintiff noticed that material had clogged or wrapped up around the feeder rollers of a fine opener machine and told the operator of the fine opener to shut down the machine and he would clear the wrap-up; about a minute after power to the fine opener had been cut, plaintiff inserted his left hand into a narrow opening between the feeder rollers and a metal guard covering the beater roller; plaintiff's hand was struck by the beater roller, which was still coasting on its axle; plaintiff knew that the picker he normally operated utilized large, spiked cylinders to process stock and that these cylinders rotated at high speeds and continued to coast after power to the picker had been cut; plaintiff knew that the movement of these cylinders could be verified by observing the movement of a belt-pulley assembly on the outside of the picker; the morning before his accident plaintiff had observed the interior of a fine opener and was thus aware that the fine opener functioned in much the same manner as the picker and that a rapidly rotating spiked cylinder was located behind the feeder rollers; and, as in the picker, part of the belt-pulley assembly which turned the spiked cylinder in the fine opener was visible on the outside of the machine.

**4. Negligence § 13.1— contributory negligence not barred by failure to warn of danger**

The determination of contributory negligence cannot be predicated on the automatic application of per se rules which do not take into account the particular state of facts presented. Accordingly, the defense of contributory negligence is not invariably barred by defendant's failure to warn of a danger when the facts indicate that plaintiff, in the exercise of ordinary care, should have known of the danger of injury independent of any warning by defendant.

**5. Sales § 22— product liability case—strict liability inapplicable**

The doctrine of strict liability will not be applied in product liability cases.

Justice BROCK did not participate in the consideration and decision of this case.

APPEAL by plaintiff from decision of the Court of Appeals, 44 N.C. App. 422, 261 S.E. 2d 247 (1980) (*Wells, J.,* dissenting), affirming judgment of *Hairston, J.,* entered 30 September 1978 in IREDELL Superior Court.

Prior to 6 August 1975 plaintiff—who was nineteen years old—had been employed for three months at Carolina Mills, a yarn mill. On 6 August 1975 plaintiff received serious injuries to his left hand as he attempted to unclog a "fine opener" machine manufactured by defendant. Raw fiber enters the fine opener machine through two feeder rollers. Immediately behind the feeder rollers is a heavy cylinder covered with sharp, wire-wound teeth, a "beater roller," which spins at a high rate of speed, blending the fiber. The beater roller continues to rotate or "coast" on its axle for a few minutes after power to the machine is shut off. Prior to the accident, plaintiff noticed that material had clogged, or "wrapped up," around the feeder rollers on the fine opener machine. Plaintiff told the operator of the fine opener that if he would shut the machine down, plaintiff would take care of the wrap-up. About a minute after power to the machine had been cut, plaintiff inserted his left hand into a narrow opening between the feeder rollers and a metal guard which covered the beater roller. Plaintiff's hand was immediately struck by the beater roller, which was still coasting on its axle. As a result of this accident, most of plaintiff's left hand had to be amputated.

Plaintiff instituted this action to recover damages for his injuries, alleging, in pertinent part, that his injuries had been proximately caused by defendant's negligence in the design and manufacture of the fine opener.

Plaintiff presented evidence tending to show that the design of the fine opener did not adequately guard against contact with the beater roller; that defendant did not design the machine to comply with the recommendations of a national Textile Safety Code then in effect; that guards sufficient to make the fine opener safe could have been installed for under $100; that defendant had not affixed a warning on the fine opener which advised a user of the danger posed by the beater roller.

Evidence for the defendant tended to show, in pertinent part, that plaintiff failed to exercise ordinary care for his own safety and should have known, independent of any warning, that there was a danger that the beater roller would continue to coast after power to the fine opener was shut off. This evidence will be discussed in greater detail in the opinion.

The issues of negligence and contributory negligence were submitted, and the jury found defendant and plaintiff negligent and contributorily negligent, respectively, as alleged.

Plaintiff appealed to the Court of Appeals. That court affirmed with Judge Wells dissenting. Plaintiff appeals as of right to the Supreme Court pursuant to G.S. 7A-30(2).

*Homesley, Jones, Gaines, Dixon & Fields, by Edmund L. Gaines, for plaintiff appellant.*

*Golding, Crews, Meekins, Gordon & Gray by James P. Crews, and Rodney A. Dean, for defendant appellee.*

HUSKINS, Justice.

Since the result we reach is dictated by the jury's answer to the contributory negligence issue, we assume arguendo, without deciding, that there was sufficient evidence of defendant's negligence to carry the case to the jury and support an affirmative answer to the first issue. Moreover, by reason of the verdict on the contributory negligence issue, we find it unnecessary to determine whether the evidence shows that plaintiff was guilty of contributory negligence as a matter of law.

This is a product liability action tried upon a theory of negligence. Plaintiff seeks to recover for injuries which he alleges were proximately caused by defendant's negligence in the design and manufacture of a "fine opener," a machine used in the yarn industry to mix and blend fibers.

[1] In a product liability action founded on negligence, "[t]here is no doubt that . . . [plaintiff's] contributory negligence will bar his recovery to the same extent as in any other negligence case." W. Prosser, Law of Torts § 102 at 670 (4th ed. 1971). *Accord,* 1 L. Frumer & M. Friedman, Products Liability § 13.01 (1979); *Douglas v. Mallison,* 265 N.C. 362, 144 S.E. 2d 138 (1965); G.S. 99B-4(3) (effective 1 October 1979). In the instant case, defendant's evidence, elicited through cross-examination, tended to show that plaintiff's contributory negligence was a proximate cause of the injury complained of. Accordingly, the contributory negligence issue was submitted to the jury, and plaintiff was found contributorily negligent as alleged.

The dispositive issue on this appeal is whether there was sufficient evidence to carry the case to the jury on the question of contributory negligence.

An apt statement of the doctrine of contributory negligence for purposes of this appeal is found *Clark v. Roberts*, 263 N.C. 336, 139 S.E. 2d 593 (1965):

> "Every person having the capacity to exercise ordinary care for his own safety against injury is required by law to do so, and if he fails to exercise such care, and such failure, concurring and cooperating with the actionable negligence of defendant contributes to the injury complained of, he is guilty of contributory negligence. Ordinary care is such care as an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury. [Citations omitted.]
>
> Plaintiff is subject to this universal rule, but his conduct on this occasion 'must be judged in the light of the general principle that the law does not require a person to shape his behavior by circumstances of which he is justifiably ignorant, and the resultant particular rule that a plaintiff cannot be guilty of contributory negligence unless he acts or fails to act with knowledge and appreciation, *either actual or constructive*, or the danger of injury which his conduct involves.' [Citations omitted]" (Emphasis added).

[2] In order for contributory negligence to apply, it is not necessary that plaintiff be *actually aware* of the unreasonable danger of injury to which his conduct exposes him. Plaintiff may be contributorily negligent if his conduct ignores unreasonable risks or dangers which would have been apparent to a prudent person exercising ordinary care for his own safety. *See* Restatement (Second) of Torts § 466(b) and Comment f, W. Prosser, *supra*, § 65 at 424. *Accord, Clark v. Roberts, supra.* Simply put, the existence of contributory negligence does not depend on plaintiff's *subjective* appreciation of danger; rather, contributory negligence consists of conduct which fails to conform to an *objective* standard of behavior — "the care an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury." *Clark v. Roberts, supra.*

[3] Viewed in the light most favorable to defendant, the evidence pertinent to contributory negligence tends to show that

plaintiff had been employed at Carolina Mills, a yarn mill, for three months. The only job he held at the mill during this period was that of a picker tender. Plaintiff stood at a huge machine called a picker—a long machine that beat and fluffed the material as it passed through and, in the final stage, pressed it into a roll. Plaintiff's job was to remove the rolls of material as they emerged from the picker. Additionally, plaintiff was to make minor repairs on the picker. Among the minor repairs plaintiff engaged in was the removal of "wrap-ups" from the machinery. "A wrap-up is when material wraps around a roller or any part of a machine that prevents it from doing its job sufficiently." (Plaintiff's testimony, Record p. 70.)

Plaintiff knew that inside the picker were heavy, spiked cylinders which turned rapidly while the picker was operating and continued to turn for some time or "coast" after the picker was shut down. "The pickers do have wheels or rotors or boards or whatever inside that turn with these spikes on them to open the fibers. I knew that those heavy rollers were inside the pickers. When you would turn off the picker the heavy rollers and cylinders inside would continue to turn. I knew that on the machines that did this kind of job there were heavy rotors that continued to turn after the power was turned off. . . ." (Plaintiff's testimony, Record p. 106) Plaintiff further testified that the rotors were turned by leather belts on pulleys which were visible on the outside of the machine. When the picker was shut down, plaintiff could tell whether something was still moving inside the picker by observing whether the leather belt and pulley were still turning.

The machine on which plaintiff was injured, the "fine opener," was connected to the picker through ductwork. The material processed through the fine opener would pass through this ductwork to the picker. Together, the fine opener and picker constituted a "blendline." Plaintiff knew the fine opener did not look like a picker but knew it did essentially the same thing. He knew that the fine opener received unprocessed, raw stock through two "feeder rollers"; that immediately upon passing through these feeder rollers the stock was met by the "beater roller," or a large, rapidly rotating cylinder with thousands of steel spikes.

The beater roller was covered by a metal guard which came down to the feeder rollers located directly in front of the beater roller. There was an opening of one inch to one and one-eighth inches between the end of the metal guard and the feeder rollers. This opening was "certainly big enough to put your hand in." (Plaintiff's testimony, Record p. 176) The opening was sealed by a leather strip which rested on the top roller. The one and one-eighth inch clearance allowed the upper feeder roller to move upward as stock entered the feeder rollers on its way to the beater roller. The beater roller was located one and one-half inch behind the feeder rollers. Like the cylinders inside the picker, the beater roller continued to coast for several minutes after the power was shut off. Moreover, as in the picker, part of the belt-pulley assembly which turned the beater roller was visible on the outside of the fine opener. This belt and pulley assembly continued to move after power to the fine opener had been shut off.

On the morning of the accident, plaintiff had been called by his supervisor to unfasten a wrap-up on another fine opener. The cover of this fine opener had been removed. Thus, shortly before his accident, plaintiff had an opportunity to observe at close quarters the interior of a machine identical to the one on which he was injured. Plaintiff could see the spiked beater roller, the proximity of the beater roller to the feeder rollers where the material was wrapped, and could note that the fine opener processed stock in much the same manner as the picker, i.e., through rapidly spinning spiked cylinders which opened, blended and fluffed the moving stock.

At 1 p.m. on the day of the accident, plaintiff noticed that the back hopper of the picker was not receiving sufficient stock from the fine opener. He proceeded to the fine opener and noticed a wrap-up on the feeder rollers. This wrap-up was impeding the flow of stock through the fine opener. Plaintiff told the operator of the fine opener that he would unfasten the wrap-up, and asked him to shut down the machine. About a minute after the machine had been shut down, plaintiff intentionally inserted his left hand through the narrow clearance between the feeder rollers and the metal guard. Plaintiff's hand was instantly caught in the rapidly turning beater roller. At no time prior to inserting his hand inside the fine opener did plaintiff check to see whether there were any moving parts inside the fine opener.

Plaintiff testified that he had no idea there were any parts moving inside the fine opener when he inserted his left hand through the narrow clearance between the feeder rollers and the metal guard. However, as previously noted, plaintiff's *subjective* awareness of danger is not determinative on the issue of his contributory negligence. Rather, the determinative factor is whether plaintiff's conduct conforms to the standard of behavior required of all persons having the capacity to care for their own safety — "the care an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury." *Clark v. Roberts, supra.*

In the instant case there is sufficient evidence from which a jury could conclude that in placing his hand inside the fine opener without pausing to check for moving parts inside, plaintiff failed to use the care that an ordinarily prudent person would have exercised under similar circumstances to avoid injury. The evidence indicates that plaintiff was aware of circumstances which would have alerted an ordinarily prudent person to the strong possibility that a large, steel spiked cylinder would continue to coast rapidly inside the fine opener after power to that machine had been shut off. Plaintiff knew that the picker he normally operated utilized large, spiked cylinders to process stock; that these cylinders rotated at high speeds and that they continued to coast rapidly after power to the picker had been cut; that the movement of these cylinders could be verified by observing the movement of the belt-pulley assembly mounted on the outside of the picker. Significantly, the morning before his accident plaintiff had observed the interior of another fine opener and thus was aware that the fine opener functioned in much the same manner as the picker, that one and one-half inches behind the feeder rollers was a large, rapidly rotating, spiked cylinder which opened and blended the raw stock. Finally, the evidence indicates that, as in the picker, part of the belt-pulley assembly which turned the spiked cylinder was visible on the outside of the fine opener.

In sum, the evidence permits a jury finding that plaintiff, in the exercise of ordinary care, should have been aware of the danger that the spiked beater roller inside the fine opener would continue to coast rapidly after power to that machine had been cut; that plaintiff was contributorily negligent in placing his hand inside the fine opener so soon after power to it had been cut

without first determining that no parts were moving inside it; and that plaintiff's negligence was a proximate cause of the injuries for which he seeks damages. Accordingly, we hold that the court did not err in submitting contributory negligence to the jury. The verdict conclusively bars plaintiff's recovery in this action.

[4] The issue of defendant's negligence was submitted to the jury and answered against defendant. On that issue, the trial judge instructed the jury, in pertinent part, that defendant would be guilty of negligence if it failed to exercise reasonable care in warning a user of facts which made the fine opener machine dangerous for use. Plaintiff and amicus curiae contend that the defense of contributory negligence is inapplicable as a matter of law where defendant's negligence consists of a failure to warn a user of latent dangers in a product. They argue that a defendant's failure to warn per se precludes a plaintiff from ever being in a position reasonably to ascertain that a danger of injury exists. This contention is without merit. The argument overlooks the fundamental principle that, like any standard requiring a determination of "reasonableness," the existence of contributory negligence depends upon the particular facts of each case. "When all is said, each case must be decided according to its own peculiar state of facts. This is true because the true and ultimate test is this: what would a reasonably prudent person have done under the circumstances as they presented themselves to the plaintiff." *Thomas v. Motor Lines*, 230 N.C. 122, 52 S.E. 2d 377 (1949). It follows, therefore, that the determination of contributory negligence cannot be predicated on the automatic application of per se rules which do not take into account the particular state of facts presented. Accordingly, the defense of contributory negligence is not invariably barred by defendant's failure to warn of a danger when, as in this case, the facts indicate that plaintiff, in the exercise of ordinary care, should have known of the danger of injury independent of any warning by defendant. *Accord, Parris v. M. A. Bruder & Sons, Inc.*, 261 F. Supp. 406 (E.D. Pa. 1966). *See generally*, L. Frumer and M. Friedman, *supra*, § 8.06.

Plaintiff brings forward several assignments relating to the judge's charge to the jury. We have carefully reviewed these assignments and find them to be without merit. Further discussion will serve no useful purpose. The charge correctly states the law and applies it to the varying aspects of the evidence in a man-

ner calculated to assist the jury in understanding the case and in reaching a correct verdict.

[5]   Finally, plaintiff and amicus curiae urge this Court to adopt the doctrine of strict liability in product liability actions. In response to this request, we note that recent comprehensive legislation in this area by the General Assembly does not adopt strict liability in product liability cases. *See* G.S. 99B-1, *et seq.* (the 1979 Products Liability Act). Significantly, the Products Liability Act specifically reaffirms the applicability of contributory negligence as a defense in product liability actions. G.S. 99B-4(3). Suffice it to say, that given the recent legislative activity in this area, we are not presently inclined to consider adoption of the rule of strict liability in product liability cases.

In summary, the issue of contributory negligence was properly submitted to the jury after a trial free from prejudicial error. Accordingly, the verdict must stand.

For the reasons stated, the decision of the Court of Appeals is

Affirmed.

Justice BROCK did not participate in the consideration or decision of this case.