David E. MARTIN, Deceased, by Marion B. MARTIN, Executrix of the Estate of David E. Martin, and Marion B. Martin, Individually, Plaintiffs,

v.

GENERAL MOTORS CORPORATION, et al., Defendants.

Civ. A. No. 90–2283.

United States District Court, E.D. Pennsylvania.

March 22, 1991.

Laurence I. Tomar and Mindey Poser Elgart of Tomar, Rosenthal & Popp, Langhorne, Pa., for plaintiffs.

Francis J. Grey, Jr. of Lavin, Coleman, Finarelli & Gray, Philadelphia, Pa., for defendants.

MEMORANDUM

ROBERT F. KELLY, District Judge.

At approximately 5:30 a.m. on the morning of July 11, 1989, the fire department of Greensboro, North Carolina received a call to respond to a fire in the parking lot of an apartment building. When they arrived at the scene, they found a 1989 Buick Riviera fully involved in flames. Although the fire was extinguished within minutes, the car had burned to the extent that some of its glass had melted and the tires had burned to the ground. When the firemen succeeded in opening the hood of the car, they saw that the engine was glowing red.

The firemen found the body of David E. Martin in the back seat of the car. Martin lived in a building adjacent to the parking lot. On April 2, 1990, the above-captioned lawsuit was filed by the executrix of the estate of David Martin. The case alleged that a defect in the Buick Riviera had been the cause of the fire and asserted that General Motors was liable under theories of strict liability, negligence, and breach of warranty.

■ The first issue that I had to decide in this case was the most important. Plaintiff alleged that the law of Pennsylvania applied to the case, while General Motors argued that I should apply the law of North Carolina. In any choice of law dispute, a federal district court is obligated to apply the choice of law principles of the forum state, in this instance Pennsylvania. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Melville v. American Home Assurance Company*, 584 F.2d 1306, 1310 (3d Cir.1978). Pennsylvania has adopted the "flexible conflicts methodology" test, which takes into account the contacts, interests, and policies of each jurisdiction. *Id.* at 1311. *See Griffith v. United Airlines*, 416 Pa. 1, 203 A.2d 796, 805–06 (1964).

■ The *Griffith* decision rejected a "wooden application" of the *lex loci delicti* rule in choice of law decisions, but it does not stand for the proposition that the place of the injury should not be considered a very strong factor. The plaintiff was correct in asserting that a choice of law decision does not turn on a counting of contacts. *See* Plaintiff's Brief in Opposition to General Motor's Motion in Limine. But in any "balancing" decision, a court is obligated to take a methodical accounting of the factors involved, and the following facts existed in this case:

The fire took place in North Carolina. The decedent, Martin, a native of North Carolina, had returned to live and work in North Carolina 18 months prior to his death. Martin had a North Carolina driver's license, and was registered to vote in North Carolina. Martin was employed by a North Carolina company, the Wilmar Spinning Company, and the Buick Riviera had been leased by the Wilmar Spinning Company for his use. The car had been leased from a North Carolina car dealership.

Because the fire occurred in North Carolina, it would follow that practically all the relevant evidence and witnesses were located in North Carolina—the burnt car, the residents of the apartment complex who witnessed the fire, the firemen who put the fire out, the coroner who performed the autopsy, and all the documentary evidence—the reports filed about the fire, the medical examiner's autopsy, even the car's maintenance history.

On the day of the accident, Martin had been in Tryon, North Carolina to attend the funeral of his mother. After the funeral, he had returned to the Greensboro area and had been seen drinking at a Greensboro restaurant. Needless to say these witnesses were also in North Carolina.

The only connection this case has to Pennsylvania is that this is where the plaintiff, who was married to Martin for 20 years, lives with her and Martin's four children. At the time of his death, David Martin and Marion Martin were estranged. The two had lived separately for four years, and Marion Martin had filed for divorce in 1988. Despite this, she remained the executrix of his will. Martin's will was probated in Pennsylvania and so, according to the plaintiff, in language following the *Griffith* decision, Pennsylvania is "inextricably concerned with the well-being of the decedent's surviving dependents." [1]

Plaintiff also maintains that despite the long separation, and the pending divorce, she maintained a close personal and physical relationship with Martin right up until the day of his death, and that although Martin lived in North Carolina, his job entailed a great deal of traveling up and down the east coast and Canada. Therefore, plaintiff argues, "Martin was as likely to fall asleep in his car in a different state as he was to fall asleep in North Carolina." [2]

The cases cited by plaintiff lent little support to plaintiff's argument because they so little resembled it. In *Griffith*, the plaintiff's decedent was a Pennsylvania citizen killed in a Colorado plane crash while traveling to Arizona. In *Kiehn v. Elkem–Spigerverket A/S Kemi–Metal*, 585 F.Supp. 413 (E.D.Pa.1984) the plaintiff's de-

1. Plaintiff's Brief at 7.

2. Plaintiff's Brief at 6.

cedent was a Pennsylvania citizen killed in a plane crash in Norway, on a plane operated by a Norwegian corporation. In *Stevens v. Cessna Aircraft Co.* 599 F.Supp. 481 (1984), the plaintiff's decedent was a member of the armed forces serving at a military base on the Kentucky—Tennessee border killed in Ohio plane crash.

In all three of these cases, the decision to apply Pennsylvania law was solidly based on the fact that where the decedents' deaths took place was more or less a happenstance. There was no question in *Griffith* and *Kiehn* that the decedents' families were in Pennsylvania and that the decedents had been living with their respective families in Pennsylvania before embarking on the business trips which ended in death. In *Stevens*, the decedent had surviving family members in two different states. But in none of these cases was the court confronted with a situation such as this, where the decedent had been separated from his wife and children for four years, was awaiting the resolution of a divorce, and had moved away from Pennsylvania and set up a domicile hundreds of miles away some 18 months before his death.

Martin's death in North Carolina was not a happenstance. He was not in North Carolina on a brief business trip. He was living there at the time of the accident, had been living there for over 18 months, and apparently planned to continue living there in the future.

This is a products liability case, based on a car manufactured by a Delaware corporation with its principal place of business in Michigan, which burned in North Carolina while being used by a North Carolina resident. Whatever relationship Martin had with General Motors was entered into in North Carolina. Whatever duty General Motors owed was owed to Martin, and the alleged breach of duty occurred in North Carolina. The main argument plaintiff seemed to make was that the interests of North Carolina were minimal compared to

legal certainty that plaintiff could not recover unless Pennsylvania law was applied.

Based on a balancing of interests, I found the choice of law ruling to be an inescapable one and on November 27, 1990 decided that the law of North Carolina must be applied. The choice of law decision was crucial because the North Carolina legislature has never adopted a strict liability standard in products liability cases, and has reaffirmed contributory negligence as a defense in products liability cases. *See Smith v. Fiber Controls Corp.*, 300 N.C. 669, 268 S.E.2d 504 (1980). Plaintiff's claim in a products liability case must be proved by the principles of negligence or breach of warranty. *Wilson Brothers v. Mobil Oil*, 63 N.C.App. 334, 305 S.E.2d 40 (1983), *cert. denied*, 309 N.C. 634, 308 S.E.2d 718, 719 (1983).[3]

██ Under the law of North Carolina, contributory negligence is a complete defense in a products liability action, and at the time of his death, Martin was legally intoxicated. The autopsy showed he had a blood alcohol level of .19. It is negligence *per se* in North Carolina to operate a motor vehicle with a blood alcohol level in excess of .10. *See Hinkamp v. American Motors Corporation*, 735 F.Supp. 176 (E.D.N.C. 1989); *Vance Trucking Co. v. Phillips*, 66 N.C.App. 269, 311 S.E.2d 318 (1984). Although Martin was not actually driving the car at the time of the fire, the North Carolina legislature has defined the "operator" of a motor vehicle as "a person in actual physical control of a vehicle which is in motion or which has the engine running." N.C.G.S. § 20–4.01(25) (Michie 1944–90).

The Supreme Court of North Carolina has stated that summary judgment is "rarely" granted in products liability cases based on a contributory negligence defense. *City of Thomasville v. Lease–Afex, Inc.*, 300 N.C. 651, 268 S.E.2d 190, 194 (1980). But in this case we are not dealing with a situation where there arguably was contributory negligence but one where

---

**3.** The North Carolina Products Liability Act states that no manufacturer shall be held liable in any products liability action if "the claimant failed to exercise reasonable care under the

circumstances in his use of the product, and such failure was a proximate cause of the occurrence that caused injury or damage to the claimant." N.C.G.S. § 99B–4(3) (Michie 1944–90).

there was arguably contributory negligence *per se*.[4]

General Motors offered this version of what happened on the final night of Martin's life, which was based on the report filed by the Greensboro fire captain who investigated the accident. After attending his mother's funeral in Tryon, Martin returned to the Greensboro area and had been seen drinking at a local restaurant. Based on police interviews of witnesses who saw Martin the night he died, the fire captain stated that Martin was "emotional and intoxicated" before the fire occurred. A witness at the restaurant told police that Martin had been crying and was emotional about his mother's death and some legal problems his son was having. The fire captain speculated that after driving back to the parking lot of his apartment complex, where he parked his car on the sidewalk, Martin "desired solitude" and decided to lay down in the back seat of his car. It was a warm, humid night and the fire captain believes Martin left the car running to provide air conditioning. Martin fell asleep and the car continued to idle for 4 to 6 hours. This caused the air conditioning fan to short out, starting a fire, and "as the fire grew, breathing conditions inside deteriorated." The medical examiner's office concluded that Martin was alive when the fire began and the cause of death was "carbon monoxide poisoning due to or as a consequence of alcohol intoxication." *See* General Motors' Motion for Summary Judgment, Exhibit F.

Plaintiff maintains that there are disputes over material facts of this case, which make summary judgment inappropriate. Plaintiff concedes Martin did park his car on the sidewalk on the night of the incident, but states that he often did this when the lot was crowded. Perhaps Martin was legally intoxicated, but he was sleeping in the car, not driving it. Perhaps the car wasn't idling for four to six hours, as the fire captain concluded, but for a shorter period of time. Perhaps the car was not even running at all. Perhaps the fire was not started by a short-circuiting air conditioner fan, but from an unspecified dashboard short circuit. Perhaps carbon monoxide would have killed Martin even if he had been sober, because Martin's intoxication might not have prevented him from exiting the burning car. *See* Plaintiff's Response to Defendant's Summary Judgment Motion.

But under a contributory negligence standard, any negligent conduct by Martin which was a proximate cause of the fire negates plaintiff's case. What Martin did or did not do would not have to be the most important cause, just *a cause*. It is clear that plaintiff cannot prevail under such a rigid standard.

First, the blood alcohol level. Martin's was tested at nearly twice the legal limit. Even if we accept plaintiff's argument that because Martin was sleeping in the car and not driving it, a negligence *per se* standard should not be applied—a proposition I am not prepared to accept—it could not be disputed that a blood alcohol level that high would diminish his mental and motor faculties considerably. It would reduce his attentiveness. It would make him less capable of avoiding harm when the fire began. And it would unquestionably dilute his decision-making ability. Martin's decision to fall asleep in the back of his car, despite the fact that he was parked outside his own apartment building, is evidence enough of this last point. Given the facts of the case, the blood alcohol level is simply an insurmountable obstacle for plaintiff to overcome.

But even if it is ignored, even if Martin were cold sober on the evening in question, could a reasonable jury conclude that Martin's actions were not a proximate cause of his demise?

---

**4.** The *Hinkamp* case, supra, involved a plaintiff making a "crashworthiness" products liability claim against an auto maker. Plaintiff had a blood alcohol level in excess of .10 at the time of the accident. The court granted defendant summary judgment, based on plaintiff's blood alcohol level and the testimony of witnesses to the accident, and stated that summary judgment was justified because plaintiff's conduct could not be eliminated as the proximate cause of the accident, or his injury. *Id.* at 178.

North Carolina's concept of proximate cause is not indigenous to that state: it is a cause which alone or in combination with another cause, produced plaintiff's injuries. Proximate cause is rooted in foreseeability. The important question is whether a person of ordinary prudence could have reasonably foreseen that such a result could occur. *See, generally, Warren v. Colombo,* 93 N.C.App. 92, 377 S.E.2d 249 (1989). Plaintiff cites the North Carolina Supreme Court's decision in *Smith v. Fiber Controls,* supra, to the effect that defendant carries a burden to prove that Martin "knew or should have known" there was a potential danger of fire. *Id.* 268 S.E.2d at 509.

Plaintiff's reliance on the *Smith* decision is puzzling. The North Carolina Supreme Court specifically rejected the position plaintiff maintains. *Id.* The plaintiff in *Smith,* who was injured in an industrial accident when he inserted his hand into some machinery, contended that the defendants were obligated to warn plaintiff of the inherent dangers of the machinery he was using. The North Carolina Supreme Court, in upholding a judgment for the defendant based on a jury finding that the plaintiff was contributorily negligent, found this argument "without merit." *Id.*

Plaintiff's interpretation of the *Smith* decision is puzzling, but plaintiff goes on to this bewildering conclusion: "Is it reasonable to assume that David Martin anticipated, by sleeping in his Buick Riviera, that he would die from carbon monoxide inhalation due to a fire? It was not!" [5]

The North Carolina Supreme Court observed in the *Smith* case that "each case must be decided according to its own peculiar state of facts. This is true because the true and ultimate test is this: What would a reasonably prudent person have done under the circumstances as they presented themselves to the Plaintiff?" *Id.* at 509; *quoting Thomas v. Thurston Motor Lines,* 230 N.C. 122, 52 S.E.2d 377 (1949).

The correct point of reference is what a reasonably prudent person would foresee—not a reasonably prudent person with a .19 blood alcohol level. And the issue is not whether Martin could have foreseen that he would die from carbon monoxide poisoning, but whether a reasonable person would have foreseen that by falling asleep in the back seat of an automobile with the engine running that there was a possibility of future danger, such as, for instance, that the engine would overheat. And would it not be reasonable to also foresee that an overheating engine, assuming it were left to overheat for hours, could produce a fire?

Foreseeability does not require clairvoyance, nor is it approached with tunnel vision. If plaintiff's concept of foreseeability was adopted, the entire concept of negligence would be rendered meaningless. The defense to any charge of negligence would be, I cannot be held liable because I never "anticipated" this would happen.

If this case went to trial, plaintiff would be left with two choices: refute the blood alcohol level, or somehow convince the jury that Martin did not fall asleep with the engine on. Even if Martin could somehow manage the first, the second would require a tremendous leap of faith. It would require the jury to believe that Martin, on a warm summer night, drove to the parking lot of his apartment building, turned off the engine, and decided to fall asleep in the back seat of a car which had all the windows up. And if the engine were not running, how and why did the car catch fire?

Plaintiff's position appears to be that such incredibly remote possibilities are matters for a jury to decide. It is a matter of law that summary judgment should be granted unless there is a triable issue of material fact. *Celotex Corporation v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corporation,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The appropriate standard is whether, based

---

5. Plaintiff's Response at 24.

on the summary judgment record, reasonable jurors could find that based on the preponderance of the evidence, that plaintiff was entitled to a verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *see also In re Paoli Rail Road Yard PCB Litigation*, 916 F.2d 829, 860 (1990).

Contributory negligence is a severe standard for plaintiffs to overcome, and this is why many states have abandoned it. But it is the law of North Carolina, and there is no question that the law of North Carolina was the only proper authority in this case. This would have been a very difficult case for plaintiff to win even under a strict liability theory, but under a contributory negligence standard, plaintiff faced an impossible task.

Therefore I shall issue the following order:

## ORDER

And now, this 22nd day of March, 1991, upon consideration of defendant General Motors' Motion for Summary Judgment and plaintiff's Response, it is ORDERED that:

1. General Motors' Motion for Summary Judgment is GRANTED;

2. All other motions are DENIED as moot;

3. The Clerk of Court is directed to list this case as closed.