HORACE LEON WHALEY AND ROSALIND BAILEY WHALEY, PLAINTIFFS V. WHITE CONSOLIDATED INDUSTRIES, INC., T/B/A FRIGIDAIRE, DEFENDANT

No. COA00-630

(Filed 5 June 2001)

**1. Damages and Remedies— punitive—damages—sufficiency of evidence—negligence action—directed verdict denied**

The trial court did not err in a personal injury action arising from an electrical shock suffered by plaintiff during an expansion of an industrial plant by denying defendant's motion for a direct verdict , j.n.o.v., or a new trial on punitive damages where defendant's employee made the decision to energize a high voltage cable

over Thanksgiving weekend in spite of the fact that substations lacked equipment and were not operational; testified that he believed that plaintiff was aware that the line was energized and that he told others, although those people testified that they were never warned; padlocked switch handles, although these locks did not prevent exposure to potentially deadly electrical currents for those working inside the cabinet; and did not "tag" the substations as required by OSHA standards to notify other workers that the equipment was energized. The evidence was sufficient to go to the jury on the question of whether the employee's behavior demonstrated a reckless indifference to the rights of others.

**2. Negligence— contributory—electrical injury—directed verdict denied**

The trial court did not err by denying defendant's motions for directed verdict, j.n.o.v., or a new trial in a negligence action arising from an electrical injury suffered during expansion of an industrial plant where defendants contended that plaintiff was contributorily negligent. The evidence tends to show that defendant's employee was the only person who knew that the high voltage cable and unfinished substations were energized, plaintiff's company had contracted for the high voltage electrical work and had no reason to assume the lines would be energized prior to completion of the substations, and there was testimony that it was not reasonable to assume that plaintiff would have been aware that the line was energized; this evidence does not so clearly show that plaintiff failed to exercise ordinary care for his own safety as to compel the conclusion that he was contributorily negligence.

**3. Negligence— contributory—instruction**

The trial court did not err in a personal injury action in its instruction to the jury as to the standard of care required of plaintiff where the instruction given adequately informed the jury that plaintiff was required to use care commensurate with the circumstances. The court was not required to use the language requested by defendant.

**4. Trials— mistrial denied—delay from flooding**

The trial court did not abuse its discretion in a negligence action by refusing to declare a mistrial after the trial was interrupted by Hurricane Floyd flooding. Although the trial was delayed by extensive flooding under arguably trying circum-

stances, it affirmatively appears from the record that the trial court made inquiry as to the effect of the delay and reached a reasoned decision based upon the jurors' responses.

Appeal by defendant from judgment entered 31 January 2000 by Judge Carl L. Tilghman in Lenoir County Superior Court. Heard in the Court of Appeals 29 March 2001.

*Moore & Van Allen, PLLC, by Lewis A. Cheek and Michael A. DeFranco, for plaintiff-appellees.*

*Mayer, Brown & Platt, by Robert B. Cordle and Mary K. Mandevilla; Walker, Clark, Allen, Herrin & Morano, L.L.P., by Jerry A. Allen, Jr., for defendant-appellant.*

MARTIN, Judge.

Plaintiffs brought this action to recover damages for personal injuries to Horace Leon Whaley (hereinafter "Whaley") and loss of consortium by Rosalind Bailey Whaley following Whaley's injury by an electric shock sustained at defendant's manufacturing plant in Kinston, North Carolina. Plaintiffs alleged, *inter alia*, that Whaley's injuries were caused by negligence on the part of defendant White Consolidated Industries, Inc. (hereinafter "defendant White") and its employee, Bobby Patton. Defendant White filed its answer, denying negligence and asserting, as affirmative defenses, negligence on the part of Whaley and on the part of his employer, E & R, Inc., and co-worker, Hugh Sutton.

Briefly summarized to the extent necessary to an understanding of the issues raised on appeal, the evidence presented at trial tended to show that defendant White contracted to expand its plant to enable it to produce dishwasher racks. The expansion required the installation of electrical equipment, including substations, which would deliver power to the industrial equipment. R.N. Rouse & Co. ("Rouse") served as the general contractor for the expansion project; Rouse subcontracted all electrical work to Triple-R Electric, which in turn hired E & R, Inc., Whaley's employer, to perform the high voltage electrical work. E & R's responsibilities included the assembly and installation of three substations, the installation of the high voltage cables to the HVL switch, and the connection of the high voltage cables from the switch to the new substations. The target date for completion of the job was Thanksgiving weekend 1995. Because certain substation equipment was not delivered on time, E & R could not

**WHALEY v. WHITE CONSOL. INDUS., INC.**

[144 N.C. App. 88 (2001)]

finish its work by this date. Although the equipment was not fully assembled and thus not ready for operation, the evidence showed that Bobby Patton, defendant's manufacturing engineer and expansion project liaison, made the decision to move ahead with the original plan to energize the high voltage cable over the Thanksgiving weekend. Energizing the cable in turn energized the unfinished substations. William Hardy Rouse, Jr., Vice President of Triple-R Electric, testified that "anything to do with electricity, especially turning the circuits on and energizing equipment, is under our jurisdiction." Once the cable and substations were energized, Patton padlocked the HVL switch handles. Nevertheless, Patton did not "tag" the equipment. Certified Safety Professional Raymond Boylston testified that, according to OSHA standards, a danger tag must be placed on any piece of energized equipment "anytime you lock out a power circuit for electrical safety." Patton also did not barricade the area. Although Patton testified that he warned several people that the cable would be energized, including Whaley and his co-worker, Sutton, all these people testified that they were not warned. The equipment E & R needed to complete work on the substations arrived in early December, and Whaley and Sutton returned to finish the job on 14 December 1995. Patton testified that he knew the men would be working on the substations, but believed they would be working on the distribution panels and not in the cabinet containing the HVL switch. Shortly after starting work, while reaching inside the cabinet to insert a bolt, Whaley leaned against an energized metal bar and incurred a severe electric shock. He suffered serious burns and remained in the Burn Center at UNC Hospitals until 22 January 1996; he also lost most of the function in his right arm.

Defendant's motion for directed verdict at the close of all the evidence was denied. The jury returned a verdict finding defendant White negligent, that such conduct was willful and wanton, and that neither Whaley nor his employer was negligent. The jury awarded plaintiffs $1.27 million in compensatory damages and $2.1 million in punitive damages. Defendant's post-trial motions for judgment notwithstanding the verdict and, in the alternative, for a new trial, were denied. Defendant appeals.

I.

[1] Assigning error to the denial of its motions for directed verdict, judgment notwithstanding the verdict, and, alternatively, a new trial, as to plaintiffs' claim for punitive damages, defendant White argues

**WHALEY v. WHITE CONSOL. INDUS., INC.**

[144 N.C. App. 88 (2001)]

there was insufficient evidence to support a finding that the conduct of its employee, Patton, was willful or wanton. We disagree.

A motion for directed verdict pursuant to G.S. § 1A-1, Rule 50(a) tests the sufficiency of the evidence to support a verdict for the non-moving party. *Manganello v. Permastone, Inc.*, 291 N.C. 666, 231 S.E.2d 678 (1977). A motion for judgment notwithstanding the verdict pursuant to G.S. § 1A-1, Rule 50(b) is essentially a renewal of an earlier motion for directed verdict. *Bryant v. Nationwide Mutual Fire Ins. Co.*, 313 N.C. 362, 329 S.E.2d 333 (1985). The same test is applied when ruling on either motion. *Id.* On a defendant's motion for a directed verdict or judgment notwithstanding the verdict, the plaintiff's evidence must be taken as true and considered in the light most favorable to him, and the motion should be denied only if, as a matter of law, such evidence is insufficient to justify a verdict for the plaintiff. *Dickinson v. Pake*, 284 N.C. 576, 201 S.E.2d 897 (1974).

> In considering any motion for directed verdict, the trial court must view all the evidence that supports the non-movant's claim as being true and that evidence must be considered in the light most favorable to the non-movant, giving to the non-movant the benefit of every reasonable inference that may legitimately be drawn from the evidence with contradictions, conflicts, and inconsistencies being resolved in the non-movant's favor.

*Bryant* at 369, 329 S.E.2d at 337-38 (citation omitted).

While a motion for directed verdict or judgment notwithstanding the verdict raises an issue of law, a motion for a new trial pursuant to G.S. § 1A-1, Rule 59 is addressed to the trial court's discretion. *Bryant, supra.* In this case, defendant White assigns error to the denial of its motion for a new trial made upon the grounds contained in Rule 59(a)(7): "Insufficiency of the evidence to justify the verdict or that the verdict is contrary to law." A motion made upon such grounds authorizes the trial court to appraise the evidence and to grant a new trial if, in the opinion of the court, the verdict is contrary to the greater weight of the credible evidence. *In re Will of Buck*, 350 N.C. 621, 628, 516 S.E.2d 858, 863 (1999). Appellate review of a trial court's ruling on a Rule 59(a)(7) motion raises no question of law, but presents only the question of whether the record affirmatively demonstrates an abuse of discretion, i.e., a probable " 'substantial miscarriage of justice' ", by the trial judge. *Id.* at 625, 516 S.E.2d at 861 (citations omitted).

To support an award of punitive damages, plaintiff must show that defendant's conduct went beyond negligence and was " 'done willfully or under circumstances of rudeness or oppression, or in a manner which evinces a reckless and wanton disregard of plaintiff's rights.' " *Beck v. Carolina Power & Light Co.*, 57 N.C. App. 373, 383, 291 S.E.2d 897, 903, *affirmed*, 307 N.C. 267, 297 S.E.2d 397 (1982) (citation omitted). Punitive damages may be awarded only when

> the defendant commits the actionable legal wrong willfully (i.e., knowingly, intentionally and voluntarily), wantonly (i.e., in conscious and intentional disregard of and indifference to the rights and safety of the plaintiff), or maliciously (i.e., motivated by personal hatred, ill will or spite for the plaintiff).

*Hornby v. Pennsylvania Nat'l. Mut. Cas. Ins. Co.*, 77 N.C. App. 475, 481, 335 S.E.2d 335, 339 (1985), *disc. review denied*, 316 N.C. 193, 341 S.E.2d 570 (1986) (citation omitted). " 'An act is wanton when it is done of wicked purpose or when done needlessly, manifesting a reckless indifference to the rights of others.' " *Siders v. Gibbs*, 39 N.C. App. 183, 187, 249 S.E.2d 858, 861 (1978) (citation omitted).

In the present case, Patton, acting as liaison for defendant White, made the decision to energize the high voltage cable over Thanksgiving weekend 1995, in spite of the fact that the substations lacked necessary equipment and were not operational. Patton energized the cable, which in turn energized the substations, knowing employees from E & R still had work to perform on the substations. Patton testified that he believed plaintiff and Sutton were aware the line was energized; he also claimed to have told three other people involved in the project that the line was energized, but those people testified that they were never warned. Although Patton padlocked the HVL switch handles, these locks did not prevent exposure to potentially deadly electrical currents for those working inside the cabinet. Finally, Patton did not "tag" the substations, as OSHA standards require, to notify other workers that the equipment was energized. Taken in a light most favorable to plaintiff, the evidence presented was sufficient to go to the jury on the question of whether Patton's behavior demonstrated a reckless indifference for the rights of others. Furthermore, in light of such evidence, we cannot say the trial court's discretionary ruling denying defendant White's alternative motion for a new trial pursuant to Rule 59(a)(7) on the issue of punitive damages amounted to a miscarriage of justice or an abuse of discretion. *See In re Will of Buck, supra.*

II.

**[2]** Defendant White next argues that the trial court erred in denying its motions for directed verdict, judgment notwithstanding the verdict, and, alternatively, a new trial, because Whaley was contributorily negligent as a matter of law. We disagree.

It is well established in North Carolina that a claimant's contributory negligence is a complete bar to recovery on a claim for damages sustained by reason of a defendant's negligent conduct. *Smith v. Fiber Controls Corp.*, 300 N.C. 669, 268 S.E.2d 504 (1980). The doctrine of contributory negligence has been summarized by the North Carolina Supreme Court:

> "Every person having the capacity to exercise ordinary care for his own safety against injury is required by law to do so, and if he fails to exercise such care, and such failure, concurring and cooperating with the actionable negligence of defendant contributes to the injury complained of, he is guilty of contributory negligence. Ordinary care is such care as an ordinarily prudent person would exercise under the same or similar circumstances to avoid injury."

*Id.* at 673, 268 S.E.2d at 507 (citation omitted). "[A] plaintiff is contributorily negligent as a matter of law, thereby entitling a defendant to a directed verdict, when 'the evidence taken in the light most favorable to [the] plaintiff establishes [his] negligence so clearly that *no other reasonable inferences or conclusions may be drawn therefrom.*' " *Wolfe v. Wilmington Shipyard, Inc.*, 135 N.C. App. 661, 667, 522 S.E.2d 306, 311 (1999) (emphasis added) (quoting *Dunbar v. City of Lumberton*, 105 N.C. App. 701, 703, 414 S.E.2d 387, 388 (1992)).

The evidence tends to show that defendant White's employee, Patton, was the only individual who knew the high voltage cable and unfinished substations were energized on 14 December 1995. Further, E & R contracted to perform the high voltage electrical work and thus had no reason to assume the lines would be energized prior to the completion of the substations. William Rouse, of Triple-R Electric, the company which contracted with defendant to complete all the electrical work for the project, testified that he was not aware the cable was energized. Rouse further stated that it was not reasonable to assume plaintiff would have been aware the line was energized:

**WHALEY v. WHITE CONSOL. INDUS., INC.**

[144 N.C. App. 88 (2001)]

Based on the condition of the equipment—I mean, they wrapped the equipment up. We put light bulbs in it to keep moisture out of it. There shouldn't have been any power on it. I wouldn't have asked myself. I would probably have done just like he did: went in there and gone back to work. I mean, that was his responsibility to do it. That's what they got paid for.

We hold the evidence, taken in the light most favorable to plaintiffs, does not so clearly show that Whaley failed to exercise ordinary care for his own safety as to compel the conclusion that he was contributorily negligent. *See Partin v. Carolina Power & Light Co.*, 40 N.C. App. 630, 253 S.E.2d 605, *disc. review denied*, 297 N.C. 611, 257 S.E.2d 219 (1979) (citation omitted). Therefore, defendant was not entitled to a directed verdict or judgment notwithstanding the verdict based on Whaley's contributory negligence. Similarly, the trial court did not abuse its discretion in denying defendant White's motion for a new trial on the grounds the verdict finding that Whaley was not contributorily negligent was against the greater weight of the evidence.

[3] In a related assignment of error, defendant White contends the trial court erred in instructing the jury as to the standard of care required of plaintiff Whaley to avoid injury to himself. The trial court instructed:

[a] person is under a duty to use ordinary care to protect himself and others from injury. Ordinary care means that degree of care which a reasonable and prudent person would use under the same or similar circumstances to protect himself and others from injury.

Defendant White contends the court should have instructed the jury, in accordance with its requested instruction, that Whaley was held to a heightened standard of care which required "utmost diligence and foresight" and which was "commensurate with the danger to be avoided." However, as our Supreme Court has observed, the standard of care does not vary.

The standard is *always* the rule of the prudent man, or the care which a prudent man ought to use under like circumstances. What reasonable care is, of course, varies in different cases and in the presence of different conditions. The standard is due care, and due care means commensurate care under the circumstances. (citations omitted).

*Jenkins v. Leftwich Elec. Co.*, 254 N.C. 553, 559-60, 119 S.E.2d 767, 772 (1961). We believe the instruction given in this case adequately informed the jury that Whaley was required to use due care, that is, care commensurate with the circumstances. The trial court was not required to use the exact language requested by defendant White, as the charge given was correct and included in substance the requirement that Whaley exercise that same degree of care as a reasonable man would exercise commensurate with the circumstances. *See King v. Higgins*, 272 N.C. 367, 158 S.E.2d 67 (1967); *Williams v. Randolph*, 94 N.C. App. 413, 380 S.E.2d 553, *disc. review denied*, 325 N.C. 437, 384 S.E.2d 547 (1989).

III.

In its next assignment of error, defendant White contends it is entitled, pursuant to G.S. § 97-10.2(e), to a reduction in the damages awarded Whaley by the jury in the amount of the worker's compensation benefits which he received because the negligence of his employer, E & R, Inc., through Whaley's co-worker, Hugh Sutton, combined to produce the injury. As required by the statute, the issue of E & R's negligence was submitted to the jury; the jury determined that Whaley's injury was not caused by negligence on the part of E & R, Inc. Nevertheless, defendant White contends the trial court erred in denying its motion for a directed verdict and judgment notwithstanding the verdict, and alternatively, for a new trial, on the issue because the evidence showed that Sutton was negligent as a matter of law. We disagree.

There was evidence tending to show that Sutton arrived on the job-site before Whaley and, thus, had perhaps more time to observe the surroundings than did Whaley. Sutton admitted seeing the padlocks on the switch handles. Nevertheless, he testified that seeing the padlocks did not lead him to believe the substations were energized because no "lock-out tags" were found on the substations. In addition, electrical contractor Rouse admitted during the trial that, based on the look of the substations, "[t]here shouldn't have been any power on it. I wouldn't have asked myself." Finally, Sutton spoke with defendant White's project liaison on the morning of the accident, but Patton did not tell him that the line was energized. Thus, the issue of Sutton's negligence was properly submitted to the jury, and defendant White's motions were properly denied.

**WHALEY v. WHITE CONSOL. INDUS., INC.**

[144 N.C. App. 88 (2001)]

### IV.

**[4]** In its final assignment of error, defendant White contends the trial court erred when it refused to declare a mistrial after the trial was interrupted due to flooding caused by Hurricane Floyd. The decision as to whether to declare a mistrial is within the discretion of the trial court; accordingly, " 'unless the ruling is clearly erroneous so as to amount to a manifest abuse of discretion, it will not be disturbed on appeal.' " *State v. Parker*, 119 N.C. App. 328, 336, 459 S.E.2d 9, 13 (1995) (citation omitted). In its Memorandum Decision and Order, the trial court explained:

> the Court made inquiry of the jury regarding their ability to continue with the case and discharge their duty. All jurors, without hesitating, indicated that they could continue as jurors and complete the case despite the flood and its effect on them, and despite the two-week delay.

Although the trial was delayed by extensive flooding caused by Hurricane Floyd and was completed under arguably trying circumstances, it affirmatively appears from the record that the trial court made inquiry as to the effect of the delay and reached a reasoned decision based upon the jurors' responses. Hence, defendant White has failed to show a manifest abuse of discretion in the trial court's decision to deny defendant's motion for a mistrial and complete the trial following the two week delay. This assignment of error is overruled.

No error.

Judges BIGGS and JOHN concur.