NO. COA13-720

NORTH CAROLINA COURT OF APPEALS

Filed: 6 May 2014

CITY OF ASHEVILLE,
　　　Petitioner

　　　v.　　　　　　　　　　　　　　　Buncombe County
　　　　　　　　　　　　　　　　　　　No. 10 CVS 5296
ROGER S. ALY,
　　　Respondent


Appeal by petitioner from order entered 4 January 2013 by Judge James U. Downs in Buncombe County Superior Court. Heard in the Court of Appeals 20 November 2013.

> *Ward and Smith, P.A., by Rendi L. Mann-Stadt, and Office of the City Attorney, by Kelly Whitlock, for petitioner-appellant.*

> *Adams, Hendon, Carson, Crow and Saenger, P.A., by Robert C. Carpenter and John C. Hunter, for respondent-appellee.*


DAVIS, Judge.


Petitioner City of Asheville ("the City") appeals from the trial court's order finding that the termination of Respondent Roger S. Aly ("Respondent") from his employment with the City of Asheville Police Department ("APD") was not justified. After careful review, we affirm the trial court's order.

**Factual Background**

In July 2009, while employed by the APD as a police officer, Respondent rented a laptop computer for his personal use from a rental store called Aaron's. The rental agreement stated the computer was "rent to own," meaning that after a certain number of payments, Respondent would have the option of purchasing the computer. During the rental period, Respondent used the computer to access his personal email, download photographs, and back up his Blackberry cell phone.

In December 2009, Respondent returned the computer to Aaron's. He testified that before doing so, he attempted to remove the files that he had downloaded onto the computer by highlighting the files, moving them into the "recycling bin," and selecting "empty." He further testified that, unbeknownst to him, this procedure failed to remove the files that Respondent had imported from his cell phone and downloaded onto the computer. These files contained, in part, various pictures of Respondent's family, friends, pets, and fellow APD officers in uniform. However, other files contained pictures of nude women and racially offensive images.

In March 2010, Janice Farmer ("Ms. Farmer") went to Aaron's to rent a computer for her son. The computer that Ms. Farmer rented was the computer that had previously been rented by

Respondent. While using the computer's webcam to post a picture on a website, Ms. Farmer's son discovered the images that Respondent had downloaded, including the pictures of nude women and the racially offensive images. Ms. Farmer contacted the Buncombe County Sheriff's Office and was referred to Detective Jeff Sluder ("Detective Sluder"). She described to Detective Sluder the offensive images her son had found on the computer and then turned the computer over to him.

Detective Sluder proceeded to extract the images from the computer and recognized some of the pictures as depicting APD officers. Because of this, he notified the APD. Detective Anthony Johnson ("Detective Johnson"), the computer crimes investigator for the APD, retrieved the computer from Detective Sluder and conducted a forensic analysis of the computer's hard drive, discovering approximately 360 images on the computer. Out of these 360 images, Detective Johnson found 16 to be offensive. None of these 16 images depicted officers of the APD. Detective Johnson also determined that none of the images were illegal.

On 9 April 2010, Lieutenant Sean Pound ("Lt. Pound") of the APD Office of Professional Standards notified Respondent that an employee misconduct complaint had been filed against him and

that an internal investigation would ensue. He then provided Respondent with a copy of an APD internal incident report and a letter evidencing the complaint.

At the conclusion of the investigation, Lt. Pound found "no indication that [Respondent] had distributed the [offensive] photos to anyone else" and forwarded the results of the internal investigation to APD Chief William Hogan ("Chief Hogan"). On 1 June 2010, Chief Hogan conducted a pre-disciplinary conference with Respondent. At the conference, Respondent explained that the computer had been solely for personal use and that the inappropriate images were from emails and texts sent to him by friends. At the conclusion of the pre-disciplinary conference, Chief Hogan placed Respondent on suspension with pay.

On 10 June 2010, Chief Hogan terminated Respondent's employment with the APD. Respondent appealed his termination to the Asheville City Manager, who upheld the termination. Respondent then appealed to the Asheville Civil Service Board ("the Board") pursuant to his rights under the Asheville Civil Service Act, 2009 N.C. Sess. Laws ch. 401, § 8. ("the Civil Service Act").

On 20 September 2010, the Board held a hearing to determine whether Respondent's termination was justified. Following the

hearing, the Board found that Respondent's failure to "prevent the inappropriate images from becoming public through the return of the computer to Aaron's . . . violated one or more of the City's policies and the rules of conduct of the APD, but [that] the violations were not so severe as to warrant termination." Based on this finding, the Board concluded that "the termination of [Respondent] by the City of Asheville was not justified and should be rescinded and the City should take such steps as are necessary for a just conclusion of the matter before the board."

The City appealed the decision of the Board to Buncombe County Superior Court for a trial *de novo* as provided for under § 8(g) of the Civil Service Act. In its petition for review of the Board's decision, the City did not request a jury trial, and on 10 December 2012, a bench trial took place before the Honorable James U. Downs.

At the conclusion of the trial, Judge Downs issued an order (1) finding that the termination of Respondent's employment was not justified; and (2) ordering that Respondent "be immediately reinstated as Senior Police Officer of the Asheville Police Department with the restoration of all back pay due and all other rights as if the termination had not

occurred." The City filed a timely notice of appeal to this Court.

## Analysis

### I. Overview of the Civil Service Act

Originally enacted by the General Assembly in 1953, the Civil Service Act provides a system of civil service protection for employees of the City, establishing the Board and charging it with the duty to make rules for "the appointment, promotion, transfer, layoff, reinstatement, suspension and removal of employees in the qualified service." 1953 N.C. Sess. Laws ch. 757, § 4. While the Civil Service Act — as originally enacted — did not provide a mechanism for judicial review of the Board's decisions, *Jacobs v. City of Asheville*, 137 N.C. App. 441, 443-44, 528 S.E.2d 905, 907 (2000), our Supreme Court held in 1964 that:

> [i]n view of the provisions of the statute creating the Civil Service Board of the City of Asheville, and the procedure outlined in Section 14 thereof, we hold that a hearing pursuant to the provisions of the Act with respect to the discharge of a classified employee of the City of Asheville by said Civil Service Board, is a quasi-judicial function and is reviewable upon a writ of certiorari issued from the Superior Court.

*In re Burris*, 261 N.C. 450, 453, 135 S.E.2d 27, 30 (1964). In 1977, the General Assembly formally amended the Civil Service

Act to authorize an appeal of the Board's decisions to superior court for a trial *de novo*. *Jacobs*, 137 N.C. App. at 444-45, 528 S.E.2d at 907-08; *see also* 1977 N.C. Sess. Laws ch. 415, §8.

Section 8 of the Civil Service Act provides, in pertinent part, as follows:

> (a) Whenever any member of the classified service of the City is discharged . . . that member shall be entitled to a hearing before the Civil Service Board to determine whether or not the action complained of is justified. . . .

> (b) Any member of the classified service of the City who desires a hearing shall file his or her request for hearing with the City Clerk within 10 days after learning of the act or omission of which he or she complains but not before the member shall have exhausted his or her remedy provided by the grievance procedures established by ordinance or policy of the City and the grievance procedure shall be concluded within 30 days. . . . Upon receipt of notice as required in this section, the City Clerk shall set the matter for hearing before the Civil Service Board at a date not less than five nor more than fifteen days from the Clerk's receipt of such notice. . . .

> . . . .

> (e) At such hearing, the burden of proving the justification of the act or omission complained of shall be upon the City . . . .

> (f) The Civil Service Board shall render its decision in writing within ten days after the conclusion of the hearing. If the Board determines that the act or omission

complained of is not justified, the Board shall order to rescind [sic] whatever action the Board has found to be unjustified and may order the City to take such steps as are necessary for a just conclusion of the matter before the Board. Such decision shall contain findings of fact and conclusions, and shall be based on competent, material, and substantial evidence in the record. Upon reaching its decision, the Board shall, in writing, immediately inform the City Clerk and the member requesting the hearing of the Board's decision.

(g) Within ten days of the receipt of notice of the decision of the Board, either party may appeal to the Superior Court Division of the General Court of Justice for Buncombe County for a trial de novo. The appeal shall be effected by filing with the Clerk of the Superior Court of Buncombe County a petition for trial in superior court, setting out the fact[s] upon which the petitioner relies for relief. If the petitioner desires a trial by jury, the petition shall so state. Upon the filing of the petition, the Clerk of the Superior Court shall issue a civil summons as in [a] regular civil action, and the sheriff of Buncombe County shall serve the summons and petition on all parties who did not join in the petition for trial. . . . Therefore, the matter shall proceed to trial as any other civil action.

2009 N.C. Sess. Laws ch. 401, § 8 (alterations in original).

## II. Standard of Review

In this appeal, we are reviewing the judgment entered by the trial court following a *de novo* trial conducted pursuant to § 8(g) of the Civil Service Act. "A *de novo* proceeding pursuant

to a specific statutory mandate requires [the] judge or jury to disregard the facts found in an earlier hearing or trial and engage in independent fact finding." *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 661, 599 S.E.2d 888, 895 (2004). A trial *de novo* is a "new trial on the entire case — that is, on both questions of fact and issues of law — conducted as if there had been no trial in the first instance." *Id.*

This Court has previously explained the scope of a *de novo* trial under the Civil Service Act as follows:

> [T]rial *de novo* vests a court with full power to determine the issues and rights of all parties involved, and to try the case as if the suit had been filed originally in that court. . . . *This means that the court must hear or try the case on its merits from beginning to end as if no trial or hearing had been held by the Board and without any presumption in favor of the Board's decision.*

*Jacobs*, 137 N.C. App. at 445, 528 S.E.2d at 908 (internal citations and quotation marks omitted).

Therefore, "[t]he applicable standard of review on appeal where, as here, the trial court sits without a jury, is whether competent evidence exists to support the trial court's findings of fact and whether the conclusions reached were proper in light of the findings. Competent evidence is evidence that a reasonable mind might accept as adequate to support the

finding." *In re Adams*, 204 N.C. App. 318, 320–21, 693 S.E.2d 705, 708 (2010) (citation omitted). "'[F]indings of fact made by the trial judge are conclusive on appeal if supported by competent evidence, even if . . . there is evidence to the contrary.'" *Sisk v. Transylvania Cmty. Hosp., Inc.*, 364 N.C. 172, 179, 695 S.E.2d 429, 434 (2010) (quoting *Tillman v. Commercial Credit Loans, Inc.*, 362 N.C. 93, 100-01, 655 S.E.2d 362, 369 (2008)). "Conclusions of law drawn by the trial court from its findings of fact are reviewable *de novo* on appeal." *Carolina Power & Light Co. v. City of Asheville*, 358 N.C. 512, 517, 597 S.E.2d 717, 721 (2004).

## III.  Application of § 8 of the Civil Service Act

As noted above, § 8(a) of the Civil Service Act states in pertinent part as follows:  "Whenever any member of the classified service of the City is discharged, . . . that member shall be entitled to a hearing before the Civil Service Board to determine whether or not the action complained of is *justified*." 2009 N.C. Sess. Laws ch. 401, § 8 (emphasis added).

The essence of the parties' dispute in this appeal centers on how the term "justified" — which is undefined in the Act — should be construed.  Our appellate courts have on several prior

occasions determined whether the termination of an employee of the City was justified under the Civil Service Act.

In *In re Burris*, 263 N.C. 793, 140 S.E.2d 408 (1965), our Supreme Court addressed the issue of whether the discharge of an employee in Asheville's Tax Department was justified by the fact that he had acquired an interest in real property which the City was attempting to purchase for its own use in association with its airport. *Id*. at 794, 140 S.E.2d at 409. Our Supreme Court upheld the dismissal, holding that "[w]here an employee deliberately acquires an interest adverse to his employer, he is disloyal, and his discharge is justified." *Id.* at 794, 140 S.E.2d at 410.

In *Warren v. City of Asheville*, 74 N.C. App. 402, 328 S.E.2d 859, *disc. review denied*, 314 N.C. 336, 333 S.E.2d 496 (1985), a police officer employed by the City was accused of making a homosexual advance towards a fellow officer while off duty. The accused officer was ordered to take a polygraph examination. After he refused, he was terminated by the chief of police. *Id.* at 403-04, 328 S.E.2d at 861.

He appealed his termination under the Civil Service Act, and a jury ultimately rendered a verdict in his favor. The trial court denied the City's motion for a directed verdict,

motion for judgment notwithstanding the verdict, and motion for a new trial. *Id.* at 405, 328 S.E.2d at 861-62. We affirmed the trial court's ruling, holding that the jury could have rationally concluded the firing was not justified in light of evidence that the department planned to inquire during the polygraph test into highly personal topics about the employee that were not specifically related to the charges against him. *Id*. at 408, 328 S.E.2d at 863.

However, in neither of these cases were we called upon to provide a definition of the term "justified" as used in § 8 of the Civil Service Act. "The primary objective of statutory interpretation is to ascertain and effectuate the intent of the legislature." *McCracken & Amick, Inc. v. Perdue*, 201 N.C. App. 480, 485, 687 S.E.2d 690, 694 (2009), *disc. review denied*, 364 N.C. 241, 698 S.E.2d 400 (2010). Thus, as a general rule, courts should give "the language of the statute its natural and ordinary meaning unless the context requires otherwise." *Turlington v. McLeod*, 323 N.C. 591, 594, 374 S.E.2d 394, 397 (1988).

Respondent argues that in order for a termination to be "justified" under the Civil Service Act, "just cause" must exist under the standard set out by the General Assembly in the State

Personnel Act, which governs the dismissal of State employees. *See* N.C. Gen. Stat. § 126-35(a) ("No career State employee . . . shall be discharged . . . except for just cause."). However, nowhere in the Civil Service Act has the General Assembly expressly indicated that the term "justified" was intended to be synonymous with "just cause." Therefore, principles of statutory construction require that we assume the General Assembly would have made clear in the Civil Service Act its intent that the "just cause" standard be utilized had it intended for that standard to apply. *See* 3A Norman J. Singer, *Sutherland Statutory Construction* § 66:3 at 3 (7th ed. Supp. 2013) ("When the legislature uses a term or phrase in one statute or provision but excludes it from another, courts do not imply an intent to include the missing term in that statute or provision where the term or phrase is excluded.").

The City, conversely, urges us to apply an interpretation of the term "justified" that is far more deferential to its personnel decisions. It argues that "[t]he only job protection intended in the 'justified' standard is the assurance that the employee will not be disciplined for an arbitrary reason based on politics or membership in a particular class."

We likewise reject this proposed definition. Nothing in the language of § 8 suggests a legislative intent to confer upon the City such broad authority to discharge its employees. Moreover, the City's proposed definition is inconsistent with this Court's recognition in *Jacobs* that the Civil Service Act "recognizes the interest of the employee in [his] continued employment, and guarantees full protection of [his] due process rights prior to termination of that employment." *Jacobs*, 137 N.C. App. at 449, 528 S.E.2d at 910.

It is well established that "[i]n the absence of a contextual definition, courts may look to dictionaries to determine the ordinary meaning of words within a statute." *Perkins v. Arkansas Trucking Servs., Inc.*, 351 N.C. 634, 638, 528 S.E.2d 902, 904 (2000). The American Heritage Dictionary defines "justify" as "to demonstrate or prove to be just, right, or valid." American Heritage Dictionary 738 (3rd ed. 1993). We believe that this definition is consistent with the Legislature's use of the term "justified" in § 8(a) of the Civil Service Act. Therefore, we must now apply this definition in reviewing the trial court's order. In its order, the trial court made the following findings of fact:

> 1. Prior to his termination the respondent, Roger Aly, was a Senior Ashville

Police Department officer working as a patrol officer.

2. During 2009 the respondent rented a computer on a rent to own basis; however, since he could no longer afford the payments, he returned the computer without wiping the computer clean of any and all images from the computer.

3. Thereafter in early 2010, an [individual] rented the same computer and while using it found numerous unidentified nude images and images that were racially insensitive, offensive and inflammatory. There were in addition many images of the respondent, his family and friends that were not offensive or illegal in any way.

4. The [individual] and his mother referred the images to the Buncombe County Sheriff's Department who conducted an investigation which eventually led to the respondent because many of the un-offensive images showed the respondent and others in a police uniform.

5. During all aspects of any investigation, including internal affairs, the respondent freely admitted all images were his, the nudes and racial ones having been sent to him unsolicited on his blackberry by friends. The respondent neither solicited nor ask [sic] his friends to stop sending them; however, while the respondent did transfer the said images to the rented computer, he did not ever forward them on to anyone else. The respondent did not approve of the images in controversy, but he took no steps to erase them or wipe them off the computer when he returned it.

6. In addition a computer forensic specialist who performed a forensic analysis

on the computer found 360 images in the "documents" folder which included images of the respondent in uniform, family photos, and the pornographic and racially inflammatory pictures and cartoons, which Detective Johnson concluded were intentionally and purposely saved on the computer; however, a fact finder could also conclude that all such images were negligently kept and saved since none had been forwarded to anyone else.

7. After all intradepartmental investigations were completed the then Chief of Police, William A. Hogan, essentially concluded that the respondent had violated the Asheville Police Department personnel policy, same said department's code of conduct, and the City's Ethics Policy because the respondent had "neglectfully" failed to prevent the inappropriate images from becoming public. As a result the respondent's employment with Asheville Police Department was terminated.

The trial court then made the following conclusions of law:

1. The respondent's conduct of failing to take all appropriate measures to erase the inappropriate images as opposed to keeping them on a rented computer amounted to negligence as opposed to violating any law.

2. While the respondent's conduct of opening each one of the images in question, presumably viewing it or them, not erasing any of them and not requesting the sender(s) to refrain from sending him anymore, none of the aforesaid actions amounted to the respondent violating any law.

3. While the Respondent's conduct taken as a whole or in segments with regard to the inappropriate images could have been deemed

to having been a violation of the Asheville Police Department's personnel policy, the code of conduct and/or the City's Ethics Policy, such was not so severe as to warrant the Respondent being terminated from employment.

4. The City was not justified in terminating the Respondent's employment.

Petitioner only challenges the trial court's finding of fact 6. Thus, findings of fact 1-5 and 7 are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) ("Where no exception is taken to a finding of fact by the trial court, the finding is presumed to be supported by competent evidence and is binding on appeal.")

Specifically, Petitioner challenges the portion of finding of fact 6 stating that "a fact finder could also conclude that all such images were negligently kept and saved," claiming that this aspect of the finding is unsupported by the evidence. The City points to Detective Johnson's testimony stating his belief that the images he found on the computer were "intentionally saved" in that (1) they were saved to a specific folder; and (2) based on Detective Johnson's training and experience, it was a "very active thing to save pictures from the BlackBerry to the computer." The City also argues that the only evidence supporting the proposition that the images were not

intentionally saved was Respondent's own testimony in responding "no" when asked if he knew "how those images ended up on [his] computer."

We are satisfied that competent evidence existed to support the challenged portion of finding of fact 6. Respondent testified that he would "back up his personal phone to the desktop" in order to save his contacts and information in the event they were accidently deleted because of a previous Blackberry "catastrophic failure [where he] lost a lot of information that took [him] a great deal of time to get back." He also testified that he was unaware that the offensive images and emails at issue were being copied to his rental computer as a result of the backup. He stated that the only images he intentionally saved were "photographs of [his] kids or [himself] or events, parties, that kind of thing . . . ." In addition, he answered in the negative when asked if he "intentionally saved any emails containing pictures of naked women . . . pornographic images . . . or racist images on the computer."

It is well-settled that "[f]indings of fact made by the trial judge are conclusive on appeal if supported by competent evidence, even if . . . there is evidence to the contrary." *Sisk*, 364 N.C. App. at 179, 695 S.E.2d at 434 (internal

citations and quotation marks omitted). Accordingly, Respondent's testimony on this issue serves as competent evidence to support the trial court's finding that a fact finder could conclude that the inappropriate photographs and images remained stored on the computer at the time he returned it as a result of negligence rather than intent on his part. Therefore, the trial court's finding on this issue is binding on appeal.

The City then challenges the trial court's conclusion of law 4 that "[t]he City was not justified in terminating the Respondent's employment." The City argues that the termination was, in fact, justified based on its determination that Respondent's actions had violated various policies issued by the City of Asheville and affected the City's credibility, reputation, image, and effectiveness in the community. However, our only task is to determine whether the trial court's findings of fact support its conclusions of law. *Woodring v. Woodring*, 164 N.C. App. 588, 590, 596 S.E.2d 370, 372 (2004). It "is not the function of this Court to reweigh the evidence on appeal." *Garrett v. Burris*,___ N.C. App. ___, ___, 735 S.E.2d 414, 418 (2012), *aff'd per curiam,* 366 N.C. 551, 742 S.E.2d 803 (2013).

We believe the trial court's conclusion that Respondent's termination was not justified is supported by its findings of

fact. First, Respondent rented a personal computer that was never used for work or during work hours. Second, with regard to the offensive images found on the computer, the undisputed evidence was that he only came into possession of the inappropriate pictures and images through unsolicited emails received from others. Third, he testified that he did not intend to save the offensive images on the computer. Fourth, the investigation completed by Detective Johnson revealed no criminal activity by Respondent resulting from his possession of these images. Finally, there was no evidence that Respondent disseminated the photos or intentionally sought to have them viewed by a third party.

Based on these facts, a fact finder could rationally have found that he was discharged for conduct amounting to mere negligence in failing to "wipe" his rented computer before its return. Therefore, we conclude the trial court's findings of fact support its ultimate conclusion that the City was not justified in terminating Respondent's employment.[1]

**IV.  Award of Reinstatement and Benefits**

---

[1] We also note that our review of the APD Personnel Ordinance reveals no policy that specifically governs the use of an employee's personal computer. Nor does the City contend that any such policy existed.

In its final argument, the City contends that the trial court exceeded its authority in ordering that Respondent be fully reinstated to his former rank and receive all back pay due. We disagree.

Section 8(f) of the Civil Service Act provides broad authority for the award of a remedy to an employee of the City who has been the subject of unjustified personnel action:

> . . . If the Board determines that the act or omission complained of is not justified, the Board shall order to rescind [sic] whatever action the Board has found to be unjustified and may order the City to take such steps as are necessary for a just conclusion of the matter before the Board. . . .

2009 N.C. Sess. Laws ch. 401, § 8(f).

We believe this broad conferral of power to the Board in crafting a remedy for an unjustified termination encompasses the power to award reinstatement and back pay. Moreover, the City has failed to make any persuasive argument as to why a superior court conducting a *de novo* hearing pursuant to the Civil Service Act does not possess this same authority.

We also note that in *Warren* the trial court ordered the plaintiff to be "reinstated with full back pay and benefits" after concluding that his discharge had not been justified. *Warren*, 74 N.C. App. at 405, 328 S.E.2d at 861. We affirmed the

trial court's order in its entirety, *id*. at 410, 328 S.E.2d at 864, thereby implicitly upholding the trial court's award of back pay.

While the authority of the trial court in *Warren* to award reinstatement and back pay was not expressly discussed in our decision, we believe — as explained above — that the trial court's award of these remedies is not inconsistent with the language utilized by the General Assembly in the Civil Service Act.

Thus, we hold that the trial court here likewise acted within its authority in ordering the City to reinstate Respondent to his former rank with full back pay. Accordingly, the City's argument on this issue is overruled.

**Conclusion**

For the reasons stated above, we affirm the trial court's order.

AFFIRMED.

Judges ELMORE and McCULLOUGH concur.