IN THE COURT OF APPEALS OF NORTH CAROLINA

2021-NCCOA-153

No. COA20-249

Filed 20 April 2021

NORTH CAROLINA INDUSTRIAL COMMISSION, I.C. No. TA-24656

JAMES D. CORE, Plaintiff,

v.

NORTH CAROLINA DIVISION OF PARKS AND RECREATION, Defendant.

Appeal by Plaintiff from decision and order entered 5 December 2019 by the North Carolina Industrial Commission. Heard in the Court of Appeals 26 January 2021.

*Blanchard, Miller, Lewis & Isley, P.A., by Philip R. Miller III, and Lauren R. McAndrew, for Plaintiff-Appellant.*

*Attorney General Joshua H. Stein, by Special Deputy Attorney General Alexander G. Walton, for Defendant-Appellee.*

WOOD, Judge.

¶ 1 Plaintiff James D. Core ("Plaintiff") appeals a decision and order of the North Carolina Industrial Commission ("the Commission") denying Plaintiff's negligence claim against the North Carolina Division of Parks and Recreation ("Defendant") based on the Commission's conclusion that Plaintiff was contributorily negligent. We reverse and remand.

**I.    Background**

¶ 2        This case returns to the Court a second time. See *Core v. N. Carolina Div. of Parks & Rec.*, No. COA17-1402, 262 N.C. App. 372, 820 S.E.2d 133, 2018 WL 5796289 (2018) (unpublished).  On the weekend of October 3-4, 2014, Plaintiff and members of Plaintiff's college fraternity went to Lake Waccamaw State Park ("Lake Waccamaw"), a state park located approximately seventy-five miles south of Fayetteville, North Carolina, for a camping trip. There was no evidence the group used drugs or alcohol during the trip.  Lake Waccamaw is owned and operated by Defendant and reaches a depth of approximately twelve feet. Lake Waccamaw is a Carolina Bay Lake and has a very high botanic acid content.  A high botanic acid content affects the appearance of the water, making it appear darker and deeper than it actually is and making it very difficult to determine the depth.  Lake Waccamaw promotes swimming, boating, and fishing as some of its attractions.

¶ 3        One attraction of Lake Waccamaw is its picnic area pier, which extends 375 feet into the water.  The visitor information center at Lake Waccamaw advertises the pier as "the perfect place for swimming and sunbathing."  At the end of the pier is a large swim platform, with two metal swim ladders.  Although the deepest part of Lake Waccamaw has a depth of twelve feet, the water around the pier only reaches a "maximum depth . . . of about two feet."

¶ 4        On the morning of October 4, 2014, Plaintiff and several members of his fraternity went jogging at Lake Waccamaw.  Plaintiff and a few of his fraternity

members decided to explore the 375-foot pier. Then, Plaintiff and Nate Middleton ("Middleton") decided to go swimming. Plaintiff and Middleton testified, "we checked [the water's depth] the day of [Plaintiff's injury], right before we jumped in. We watched the sun rise and the water looked pretty clear and we couldn't see the bottom." Plaintiff and his fraternity members observed the swim ladders on the swimming platform, looked for warning signs, noticed how dark the water appeared, and dropped a rock in the water to see if they could see it hit bottom. The water appeared "very dark," and Plaintiff could not see the bottom. Plaintiff noted the several boats he had seen throughout the park, thinking the lake was deep enough for swimming.

¶ 5        Plaintiff decided to enter the water using a shallow dive, a dive he regularly performed in his experience as a competitive swimmer. Plaintiff got a running start and attempted a shallow dive. Plaintiff immediately struck the ground, and "felt a sharp pain throughout the whole right side of [his] arm," and some "sharp stiffness" in his torso area.

¶ 6        In an incident report prepared after Plaintiff's accident, a park ranger stated the group thought the depth of the water was deeper than the actual depth of the lake at that location. The park ranger also noted "[t]he lake's color [was] also dark due to the botanic acids from the organic matter which makes judging the depth very difficult."

¶ 7        Later, it was determined Plaintiff's cervical spine was broken in three different places.  Although Plaintiff recovered, he has a loss of sensation on the right side of his torso and lower right extremity, and weakness in his left hand.

¶ 8        On December 9, 2014, Plaintiff filed this action with the Commission alleging Defendant negligently failed to warn Plaintiff of the hidden danger at Lake Waccamaw.  On February 5, 2015, Defendant filed its answer denying negligence and alleging contributory negligence.

¶ 9        In August 2016, Deputy Commissioner Donovan issued an order in favor of Plaintiff, awarding Plaintiff $300,000 in damages. Defendant appealed to the Full Commission, which affirmed that Defendant was negligent, but concluded Plaintiff was contributorily negligent. Deputy Commissioner Tyler Younts ("Deputy Commissioner Younts") filed a dissent, in which he agreed with the majority's conclusion that Defendant was negligent but disagreed with its conclusion that Plaintiff was contributorily negligent.  Plaintiff appealed to this Court on September 20, 2017.  This Court held "the Commission's conclusions that Plaintiff was contributorily negligent . . . was not supported by sufficient findings of fact." *Core*, 2018 WL 5796289, at *4.  The case was then remanded to the Commission. The Commission amended its order with new findings, relying primarily on photographs identified as Plaintiff's Exhibit 7-1 ("Exhibit 7-1") and Plaintiff's Exhibit 7-11

("Exhibit 7-11").[1] The Commission relied on Exhibit 7-1, which depicted Plaintiff on a stretcher, with the marshy shoreline of Lake Waccamaw leading to the pier in the background. The Commission relied on Exhibit 7-11, as it "depicts grass visibly growing out of the water some distance out on the pier." The Commission found Defendant negligent, but found Plaintiff contributorily negligent. Exhibit 7-11 was not taken on October 4, 2014, and the Commission heard no evidence suggesting Exhibit 7-11 accurately depicted the pier on the day of Plaintiff's accident. Further, as Deputy Commissioner Younts discussed in his dissent, other photographic exhibits confirm Plaintiff's uncontradicted testimony that the grass was not near the area where Plaintiff entered the water. Plaintiff timely appealed, alleging the Commission erred in relying on Exhibit 7-1 and Exhibit 7-11 in its amended order.

## II. Standard of Review

In an appeal from an opinion and award of the Commission, "[t]his Court's review is limited to a consideration of whether there was *any competent evidence* to support the Commission's findings of fact and whether these findings of fact support the Commission's conclusions of law." *Adams v. Kelly Springfield Tire Co.*, 123 N.C. App. 681, 682, 474 S.E.2d 793, 794 (1996) (citation omitted) (emphasis in original).

---

[1] The parties introduced numerous exhibits at trial. Plaintiff's Exhibit 7 was comprised of eighteen photographs, individually labeled as Plaintiff's Exhibit 7-1 through Plaintiff's Exhibit 7-18.

The Commission's findings of fact are "conclusive on appeal when supported by competent evidence, even though there [may] be evidence that would support findings to the contrary." *Clawson v. Phill Cline Trucking, Inc.*, 168 N.C. App. 108, 113, 606 S.E.2d 715, 718 (2005) (citation and quotation marks omitted). "Competent evidence is evidence that a reasonable mind might accept as adequate to support the finding[s]." *Matter of Collins*, 251 N.C. App. 764, 766, 797 S.E.2d 28, 31 (2017) (citation and internal quotation marks omitted). The Commission's conclusions of law are reviewed *de novo. Coffey v. Weyerhaeuser Co.*, 218 N.C. App. 297, 300, 720 S.E.2d 879, 881 (2012) (citing *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004)). "Under a *de novo* review, [this C]ourt considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Fields v. H&E Equip. Servs., LLC*, 240 N.C. App. 483, 486, 771 S.E.2d 791, 793-94 (2015) (citation and internal quotation marks omitted).

## III.    Analysis

In Plaintiff's first appeal ("*Core I*"), Plaintiff argued the Commission erred when it failed to consider the reasonableness of his actions in light of all of the circumstances and any precautions taken by Plaintiff. *Core*, 2018 WL 5796289 at *5; *See also Tyburski v. Stewart*, 204 N.C. App. 540, 544, 694 S.E.2d 422, 425 (2010). Plaintiff further asserted the Commission's conclusion that Plaintiff was contributorily negligent was wholly inconsistent with its conclusion that the water at

the end of the pier was a hidden danger, as Plaintiff could not have acted with "knowledge and appreciation, either actual or constructive, of the danger" if the danger were hidden. *See Chaffin v. Brame*, 233 N.C. 377, 380, 64 S.E.2d 276, 279 (1951) (citation omitted); *Core*, 2018 WL 5796289, at *4.

¶ 12 "[A party] cannot be guilty of contributory negligence unless he acts or fails to act with knowledge and appreciation, either actual or constructive, of the danger of injury which his conduct involves." *Chaffin*, 233 N.C. at 380, 64 S.E.2d at 279 (citation omitted). A party can be contributorily negligent without knowledge of the danger of injury which his conduct involves, "if his conduct ignores unreasonable risks or dangers which would have been apparent to a prudent person exercising ordinary care for his own safety." *Smith v. Fiber Controls Corp.*, 300 N.C. 669, 673, 268 S.E.2d 504, 507 (1980) (citation omitted).

¶ 13 In *Core I*, this Court held "the Commission's conclusion that Plaintiff was contributorily negligent . . . was not supported by sufficient findings of fact" and remanded the case to the Commission for additional findings. *Core*, 2018 WL 5796289, at *4. The Commission failed to evaluate the reasonableness of Plaintiff's actions in light of the facts of the case. *Id.* at *5. The Commission "improperly concluded Plaintiff was contributorily negligent on October 4, 2014 based solely on (1) Plaintiff's admission that he did not 'ascertain the depth of the water at the end of the pier' and (2) Plaintiff's failure to enter the water by using a swim ladder or

jumping feet-first" and that "despite concluding Plaintiff lacked actual knowledge of the dangerous condition of shallow water, the Commission made no specific finding(s) as to whether or why the danger should have been obvious to Plaintiff." *Id.* at \*10.

¶ 14        The Commission subsequently amended its order making several new findings of fact and revising the negligence portion of its decision to substitute "hidden danger" with "unknown danger." The amended order also removed certain findings of fact relating to Lake Waccamaw's advertisement of the pier, the presence of swim ladders and platforms, and Plaintiff's testimony that he did not have any indication of the water's depth.

¶ 15        Plaintiff argues the Commission exceeded the scope of this Court's remand order when it revised the negligence portion of its order and removed uncontroverted findings of fact from its decision. We agree and hold that the new findings of fact in the Commission's amended order are not supported by competent evidence.

**A. The Commission's findings of fact regarding the grass.**

¶ 16        On remand, the Commission added the following findings of fact regarding grass growing near the pier:

> 5. Plaintiff's Exhibit # 7-11 depicts grass visibly growing out of the water some distance out on the pier. According to plaintiff, grass was growing out of the water "further toward the end of the pier," "almost at the point where it was becoming a pathway through the marshy grass tree like tree area." A portion of the pier, therefore, did not extend over open water, but around grass, marsh, and trees

> which are apparent to visitors. Accordingly, the furthest point away from land on the pier was situated less than 375 feet beyond where grass was visible growing out of the water around the pier and apparent to visitors . . . .
>
> . . .
>
> 20. "[T]he grass growing out of the water around the pier in relative proximity to the area where plaintiff dove into the lake should have indicated to a reasonable and prudent person that the water was relatively shallow at that location and not safe for diving.

Thus, the Commission relied on Exhibit 7-11, a photograph, to conclude Plaintiff was contributorily negligent when he entered the water. While the Commission "is free to accept or reject" any evidence and has the prerogative to assign greater or lesser weight to particular pieces of evidence when rendering findings of fact, the Commission's findings of fact must be supported by competent evidence. *See Priddy v. Cone Mills Corp.*, 58 N.C. App. 720, 723, 294 S.E.2d 743, 745 (1982); *see also Richardson v. Maxim Healthcare/Allegis Grp.*, 362 N.C. 657, 660, 669 S.E.2d 582, 584 (2008). "Competent evidence is evidence that a reasonable mind would accept as adequate to support the finding[s]." *City of Asheville v. Aly*, 233 N.C. App. 620, 625, 757 S.E.2d 494, 499 (2014) (quoting *In re Adams*, 204 N.C. App. 172, 179, 693 S.E.2d 705, 708 (2010)).

¶ 17        In finding Plaintiff contributorily negligent, the Commission relied on Exhibit 7-11, despite Plaintiff's "uncontroverted testimony that the grass was toward the shallower end of the pier toward the marshy shoreline, not near the end of the pier

where Plaintiff dove into the water." Testimony further established that Exhibit 7-11 showed an area about a third of the way down the pier, which would leave approximately 250 feet between where grass was growing out of the water and the end of the pier.

¶ 18        Further, Exhibit 7-11 was not taken on October 4, 2014, and the Commission received no evidence that Exhibit 7-11 depicted the 375-foot pier as it was on October 4, 2014. In fact, Exhibit 7-11 was introduced with numerous other photographs depicting signs at the pier, describing it as "the perfect place for swimming and sunbathing"; swim platforms; swim ladders; the length of the pier; and the view at the end of the pier.

¶ 19        Plaintiff's photographic exhibits were introduced during the park superintendent's testimony, in which he addressed the depth and visibility of the water as a condition that fluctuated. The Commission heard no evidence regarding when or even during which season, or what time of day Exhibit 7-11 was taken. There is no testimony that the photograph actually reflected the condition of the lake at the time of Plaintiff's injury. Thus, the exhibit's depiction is unreliable and insufficient evidence of the appearance of the pier on October 4, 2014. *See Haponski v. Constructor's Inc.*, 87 N.C. App. 95, 97-98, 360 S.E.2d 109, 110 (1987) (noting our rules of evidence do not govern the Commission's fact-finding, but courtroom evidentiary rules and principals which embody "competent" evidence govern our

review of whether competent evidence supports the Commission's findings).

**B. The Commission's finding that "a portion of the pier, therefore, did not extend over open water."**

¶ 20    Next, Plaintiff challenges the Commission's finding that "a portion of the pier, therefore, did not extend over open water." The Commission relied on Plaintiff's Exhibit 7-1 and Exhibit 7-11 in making this finding. Exhibit 7-1 depicts Plaintiff on a stretcher on the boardwalk and pathway that leads to the pier. In the background of Exhibit 7-1, the grassy area of Lake Waccamaw's shoreline is visible. As discussed *supra*, Exhibit 7-11 depicts grass growing out of the water near the shoreline. However, there was no evidence Exhibit 7-11 was taken on or reliably depicts the pier as it was on October 4, 2014. We agree with Plaintiff that this finding is not supported by competent evidence.

¶ 21    Lake Waccamaw's visitor center's kiosk and signage describes the pier as "extend[ing] 375 feet into the lake," making it "the perfect place for swimming and sunbathing." The pier has two metal swim ladders and features two swim platforms. There are no warning signs against diving into shallow water.

¶ 22    One of Plaintiff's fraternity members, Michael Murray ("Murray"), described the pier as a "dock," "probably like a football field" in length beyond the picnic area. Murray clarified that the dock was "abnormally long," "after you come down through this [] kind of walkway where there was [] railings . . ." and "woods on each side." In

Middleton's deposition testimony, he estimated the length of the pier as being "200 yards." Middleton stated that, when standing on the pier, "you almost felt [] you were in the center of the lake."

Plaintiff testified Exhibit 7-1 was taken "where it was [] becoming a pathway through the marshy grass[-]like tree area" at the beginning of the pier. As Deputy Commissioner Younts noted in his dissent, "the grass was toward the shallower end of the pier toward the marshy shoreline, not near the end of the pier where Plaintiff dove into the water . . . . [T]he photographs confirm Plaintiff's testimony that the grass was not near the area Plaintiff entered the water."

Considering the uncontroverted nature of Middleton, Murray, and Plaintiff's testimony that Exhibit 7-1 depicted the area leading to the pier, we hold the Commission's finding of fact is not supported by competent evidence. Exhibit 7-11 is unreliable and insufficient evidence of the appearance of the pier on the day of Plaintiff's injury. There was substantial testimony describing the length of the pier, which led Plaintiff to believe the water at the end of the pier was deep enough for swimming.

## C. The Commission's finding that the absence of a diving board or docking facilities and presence of swim ladders should have indicated the depth of the water.

The last sentence of the Commission's finding of fact 5 states that, "Plaintiff's Exhibits #7-11 do not show boats docked anywhere at the pier, and do not show any

mooring equipment or cleats indicating docking was possible for boats." Finding of fact 20 states

> the absence of a diving board, docking facilities, or any other structure designed to accommodate the use of watercraft, combined with the presence of ladders leading down into the water, should have further indicated to a reasonable and prudent person that, although it may have been possible to swim, the water surrounding the pier was too shallow for diving."

Plaintiff contends this finding is not supported by competent evidence, as the Commission heard no testimony concerning the absence of a diving board or docking facilities at the 375-foot pier. Plaintiff also contends that the water does not have to be deep enough for boating in order to be deep enough for swimming and diving. We agree. While the presence of docking facilities may indicate the water is deep enough for boating, it is unreasonable to presume that the presence of docking facilities and boats are necessary in order to indicate that an area is safe for swimming and diving. A reasonable and prudent person likely would not dive next to a boat ramp. Moreover, the Commission's finding ignores Plaintiff's uncontroverted testimony that he saw boats throughout the park.

¶ 26        Plaintiff was not attempting a swan dive, which he testified is the type of dive that is performed from a diving board into deeper water. Rather, Plaintiff performed a shallow dive, which he could do safely in only three feet of water. The Commission's acknowledgment that the presence of swim ladders may have been an indication of

depth is consistent with the evidence presented before it. The pier was self-described as the "perfect place for swimming," and Plaintiff did not "think you could swim in a foot and a half of water." Although a warning sign advises of specific dangers from aquatic wildlife and mussel shells, it does not inform visitors that the "perfect place for swimming" is only eighteen inches deep. The Commission's finding is therefore not "evidence that a reasonable mind might accept as adequate to support the finding" Plaintiff was contributorily negligent. *See Aly*, 233 N.C. App. at 625, 757 S.E.2d at 499 (citation omitted).

**D. The Commission's finding regarding the appearance of the water.**

Next, Plaintiff challenges the Commission's findings of fact regarding the appearance of the water. Finding of fact 16 states that "throwing rocks into the water was not a reasonable way to ascertain depth, as the rocks quickly disappeared in the opaque water." Finding of fact 21 states

> The Full Commission finds that the water surrounding the pier on the date of the incident was too dark to allow plaintiff to see the bottom of the lake. Nevertheless, despite having previously observed the opacity of the water, and despite having some period of time for reflection and an opportunity to investigate prior to entering head-first into the lake, plaintiff acknowledged he did not take any steps on his own to ascertain the depth of the lake water, but merely "assum[ed]" it was deep enough to allow for diving . . . . The Full Commission finds that the dark lake water present at the end of the pier should have indicated to a reasonable and prudent person that determining the depth of the water was difficult and would require further

> investigation before performing a dive under the circumstances. Accordingly, plaintiff's conduct in ignoring this obvious warning sign and diving into unknown depths of the lake water was not reasonable, and plaintiff failed to exercise such care for his own safety as a reasonably careful and prudent person would have exercised under similar circumstances.

¶ 28    Although the evidence in this case demonstrates that, at the time of Plaintiff's injury, the water was "too dark" to ascertain its depth, we hold the Commission's finding that it would indicate to a reasonable person the need for further investigation is unsupported by the evidence in this case. We find Deputy Commissioner Younts's dissent to be compelling.

¶ 29    As Deputy Commissioner Younts discussed, "a reasonably prudent person would just as soon regard the inability to see the bottom of the lake as an indicator that the lakebed lay greater than eighteen inches beneath the surface of the water, since visibility tends to decrease as depth increases in most natural bodies of water in North Carolina." However, we note the portion of the Commission's finding regarding whether Plaintiff acted reasonably is more appropriately considered to be a conclusion of law. " 'A conclusion of law' is a statement of the law arising on the specific facts of a case which determines the issues between the parties." *In re Everette*, 133 N.C. App. 84, 85, 514 S.E.2d 523, 525 (1999) (citation omitted). "[A]ny determination requiring the exercise of judgment, or the application of legal principles, is more properly classified as a conclusion of law." *Id.* A finding of fact

"that is essentially a conclusion of law . . . will be treated as a conclusion of law" on appeal. *Wiseman Mortuary, Inc. v. Burrell*, 185 N.C. App. 693, 697, 649 S.E.2d 439, 442 (2007) (citation and alterations omitted). Finding of fact 21 is more aptly considered a conclusion of law, as the Commission found Plaintiff acted unreasonably and failed to exercise the appropriate standard of care before he entered the water of Lake Waccamaw. Therefore, we review finding of fact 21 *de novo. See Coffey*, 218 N.C. App. at 300, 720 S.E.2d at 881.

¶ 30        With regard to Plaintiff and his fraternity members throwing rocks into the lake, "while this would not give an exact depth, one would reasonably expect that if the water was only eighteen inches deep, the rocks could be visible going to the bottom, thereby indicating that the water might be too shallow to dive." In addition to Deputy Commissioner Younts' compelling reasoning, we note the Commission heard Plaintiff's uncontradicted testimony that he looked down into the water and observed it appeared dark and deep and Middleton's testimony that the water "looked pretty clear and we couldn't see the bottom." The Commission acknowledged the park ranger's investigation revealed that all of the individuals on the pier that day believed the water to be deep due to its dark appearance. From his eight years of experience working at Lake Waccamaw, the park ranger testified the botanic acids caused the water to appear darker and made it difficult to determine depth. The park superintendent supported this testimony, noting that under certain conditions, even

he would be unable to distinguish the shallow depth of the water at the pier from the much deeper water at the Big Creek boat ramp. Indeed, the superintendent admitted that the depth and visibility of the water was a condition that could fluctuate from day to day, or even hour to hour.

¶ 31      The evidence presented in this case established Plaintiff did not know and had no reason to know that the water was much shallower than it appeared. Plaintiff was not required "to shape his behavior by circumstances of which he is justifiably ignorant." *Chaffin*, 233 N.C. at 380, 64 S.E.2d at 279. Plaintiff looked for warning signs, noted that the pier was the "perfect place for swimming," and saw the presence of boats throughout the park and swim ladders on the pier's swim platform before entering the water. Therefore, his actions could not be said to be unreasonable, and there is no evidence to support a finding that Plaintiff should have known about Lake Waccamaw's botanic acid level.

**E. The Commission's findings regarding the "open" and "apparent" indications of the danger of Lake Waccamaw's shallow water.**

¶ 32      Lastly, Plaintiff contends the Commission's findings regarding his failure to check the depth of the water and enter the water using another available means were not reasonable in light of the "obvious" and "apparent" indications of the danger of the lake's shallow water. We agree with Plaintiff's contention that the Commission's findings that the danger of the shallow water was "obvious" and "apparent" are not

supported by competent evidence based on our discussion *supra*. Thus, the Commission's findings that Plaintiff's actions were not reasonable because of these allegedly "obvious" and "apparent" indications of danger are not supported by competent evidence.

### F. The Commission's conclusion that Plaintiff was contributorily negligent.

¶ 33        Plaintiff's last argument on appeal challenges the Commission's conclusion of law that he was contributorily negligent. Specifically, the Commission's conclusion of law 13 states

> In this case, based on its findings that plaintiff failed to act as a reasonable and prudent person under the circumstances in that he ignored obvious indications that the water was shallow, ignored the fact that he could not see the bottom of the lake, failed to take steps to ascertain the depth of the water surrounding the pier, and failed to utilize a more reasonable method of entering the water, all while possessing knowledge that diving into shallow water could be dangerous, the Full Commission concludes that plaintiff was contributorily negligent by failing to exercise such care for his own safety as a reasonably careful and prudent person would have used under similar circumstances, and that his negligence was a proximate cause of the injuries he suffered on October 4, 2014. The Full Commission further concludes that even if plaintiff did not have actual knowledge of the shallowness of the water, plaintiff had constructive knowledge of the danger at the dock where his injury occurred, and he ignored obvious and unreasonable risks or dangers which would have been apparent to a prudent person exercising ordinary care for his own safety under the circumstances. Even though defendant may be comparatively more negligent than

> plaintiff in this matter, the record contains competent
> evidence that plaintiff was negligent, and his negligence
> was a proximate cause of his injuries. Accordingly, the Full
> Commission concludes that plaintiff's contributory
> negligence serves as a bar to his recovery of any damages
> from defendant.

The Commission relied on its findings discussed *supra*, which were not founded upon competent evidence. Contributory negligence "is a mixed question of law and fact, and this Court must determine whether the Commission's findings of fact support its conclusion that a plaintiff was or was not contributorily negligent." *Norman v. N.C. Dep't of Transp.*, 161 N.C. App. 211, 221, 588 S.E.2d 42, 49 (2003) (citation and alterations omitted).

¶ 34 "[A party] cannot be guilty of contributory negligence unless he acts or fails to act with knowledge and appreciation, either actual or constructive, of the danger of injury which his conduct involves." *Chaffin*, 233 N.C. at 380, 64 S.E.2d at 279. A party can be contributorily negligent without knowledge of the danger of injury which his conduct involves, "if his conduct ignores unreasonable risks or dangers which would have been apparent to a prudent person exercising ordinary care for his own safety." *Smith*, 300 N.C. at 673, 268 S.E.2d at 507. Here, Plaintiff had no actual or constructive knowledge of the "unknown" danger at the end of the pier. Plaintiff did not act unreasonably when he noted the opacity of the water, swim ladders, and lack of warning signs before entering the water. Due to the high botanic acid levels in

Lake Waccamaw, the shallow water was not a danger "which would have been apparent" to a reasonable person. Therefore, we hold the Commission's findings of fact are unsupported by competent evidence, and its conclusions of law are unsupported by its findings of fact.

## IV.  Conclusion

We conclude that the Commission's findings of fact as to the defense of contributory negligence are not supported by competent evidence and its conclusion of law that Plaintiff was contributorily negligent is not supported by its findings. We reverse and remand for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

Judges DIETZ and ARROWOOD concur.